IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| MICHELLE M. SPANO, | ) | CASE NO. 1:20-CV-00477 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| | ) | MEMORANDUM OPINION AND |
| COMMISSIONER OF SOCIAL | ) | ORDER |
| SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

**Introduction**

Before me[1] is an action by Michelle M. Spano under 42 U.S.C. § 405(g) seeking

judicial review of the 2020 decision of the Commissioner of Social Security that denied

Spano's 2016 application for Supplemental Security Income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my

---

[1] The parties consented to my exercise of jurisdiction the matter was transferred to me by
United States District Judge Sara Lioi. ECF No. 21.
[2] ECF No. 1.
[3] ECF No. 12.
[4] ECF No. 13.

initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supporting fact sheets[8] and charts.[9] The parties participated in a telephonic oral argument.[10]

For the following reasons, the decision of the Commissioner will be affirmed.

## Facts

### Decision of the ALJ

Spano was born in 1970 and was 46 years old at the time of the 2016 application.[11] She attended college[12] and previously worked as a babysitter at the light skill level.[13] She lives with her boyfriend of two years in his home[14] and has a son attending college.[15] Spano had a previous and separate application for benefits rejected in 2009.[16] The ALJ found that her present disability claim arises out of a 2015 "altercation,"[17] which Spano described to a physician at the time as the result of being "lured into her ex-husband's home and

---

[5] ECF No. 6.
[6] ECF No. 14.
[7] ECF Nos. 15 (Spano); 18 (Commissioner); 19 (Spano reply).
[8] ECF No. 15, Appx. 1 (Spano).
[9] ECF No. 18, Appx. 1 (Commissioner).
[10] ECF No. 25.
[11] Tr. at 28.
[12] *Id*. at 43.
[13] *Id*. at 55.
[14] *Id*. at 42.
[15] *Id*. at 43.
[16] See, *id*. at 66-77.
[17] *Id*. at 19.

assaulted by him and his wife."[18] That said, she was charged with the crime of breaking and entering, which was reduced to trespassing.[19]

The ALJ in the present case found that Spano had the following severe impairments:

Fibromyalgia; generalized anxiety disorder (GAD); depressive disorder; and post-traumatic stress disorder (PTSD).[20]

Then, the ALJ determined that Spano did not have an impairment or combination of impairments that met or medically equaled a listing.[21] Specifically, he first found that although fibromyalgia is not a listed impairment, Spano's fibromyalgia did not medically equal Listing 14.09(D) for inflammatory arthritis, nor did it equal a listing in any combination with other impairments.[22]

Next, he evaluated her mental impairments, singularly and in combination, with regard to Listings 12.04 (Bipolar and depressive disorder) and 12.06 (Anxiety related disorder).[23] To that end, the ALJ considered whether the "paragraph B" criteria of both these listings were met.[24] To meet the B criteria, a claimant must have mental impairments that result in at least one extreme or two marked limitations in four broad areas of

---

[18] Id. at 319-22.

[19] *Id*.

[20] *Id*. at 19.

[21] *Id.* at 21.

[22] *Id*.

[23] *Id.*

[24] *Id.* The paragraph B criteria of listing 12.04 are identical to the paragraph B criteria of listing 12.06. *Green v. Astrue*, 2008 WL 4791512, at * 12 (E.D. Tenn. Oct. 28, 2008).

functioning.[25] The ALJ stated that he was reviewing the evidence to determine if Spano had marked or extreme limitations of functioning in the areas of: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself.[26] He concluded that Spano had only moderate limitations in all four areas.[27]

The ALJ assessed that Spano has an RFC to do light work, with the following additional limitations:

She is limited to performing simple unskilled work, following simple instructions, few if any workplace changes, only brief and superficial interaction with the public, co-workers, and supervisors, and no fast-pace production quotas.[28]

In forming that RFC, the ALJ gave great weight to the functional opinion of consultative examiner, Dr. Freeland Ackley, M.D.[29] In addition, great weight was given to the opinion of consultative examiner Dr. Louis DeCola, M.D.[30] Moreover, he found that Dr. Ackley's opinion was "bolstered" by the functional opinions of the State agency reviewing consultants whose opinion of a light work RFC was "supported by the record at the time" the opinions were given and "continues to be consistent with the evidence

---

[25] Tr. at 21.
[26] *Id*.
[27] *Id*. at 21-22.
[28] *Id*. at 23.
[29] *Id*. at 24.
[30] *Id*. at 27.

presented at [the] hearing."[31] Later, the ALJ gave great weight to the opinions of the state agency consultants, whose opinions the ALJ found to be consist with Dr. DeCola's.[32]

The ALJ characterized the record of Spano's mental health treatment as showing her doing very well in group therapy and being discharged with "essentially normal mental status findings."[33] He further characterized her subsequent treatment records as showing that Spano "experience[] 'ups and downs'" but required no additional hospitalizations.[34] He described her treatment notes as showing continuing reports of anxiety and depression, but otherwise "unremarkable" in that there was no evidence of "significant psychological or cognitive abnormalities."[35]

As to other opinion evidence, the ALJ gave little weight to an October 2016 and an August 2017 opinion from Matthew McKee, MA, LPCC.[36] He stated that these opinions were "unaccompanied by any treatment records, impede on [an] issue reserved to the Commissioner, and give no detailed functional limitations.[37] Similarly, the ALJ gave little weight to the May 2018 opinion given by Dr. Stephen Selkirk, M.D.[38] The ALJ reasoned that Dr. Selkirk's opinion gave no specific functional limitations and is not supported by Dr. Selkirk's treatment notes, which the ALJ described as showing unremarkable

---

[31] *Id*. at 24.

[32] *Id*. at 27.

[33] *Id*. at 25.

[34] *Id.*

[35] *Id.*

[36] *Id*. at 27.

[37] *Id*. at 27-28.

[38] *Id*. at 28.

neurological findings and containing no objective evidence as to any significant mental status findings.[39]

Finally, employing the testimony of a VE, the ALJ found that Spano could perform the duties of three unskilled jobs done at skill level two: garment sorter, marker and checker.[40] Based on that conclusion, Spano was found not disabled.[41]

Issues for judicial review

Spano presents three issues for judicial review:

1.      The ALJ failed to properly apply *res judicata.*[42]

2.      The ALJ failed to properly evaluate the evidence for Spano's psychological impairments.[43]

3.      The ALJ erred at Step Five because the resume for the VE was not that of the actual VE who testified and because the testifying VE assumed things beyond the hypothetical.[44]

As to the first issue, Spano argues that the current ALJ should have taken notice on the record of a 2009 claim for benefits that was denied.[45]

---

[39] *Id.*
[40] *Id.* at 29.
[41] *Id.* at 30.
[42] ECF No. 15 at 12-13.
[43] *Id.* at 13-21.
[44] *Id.* at 21-22.
[45] *Id.* at 12.

The next issue essentially concerns the fact that the ALJ gave great weight to the opinions of consulting examiners, Dr. Ackley and Dr. DeCola, but gave only little weight to the opinions of treating sources Matthew McKee and Dr. Selkirk.[46] In addition, Spano contends that the ALJ, in assessing the B criteria, "cherry-picked" the evidence to arrive at his conclusion.[47]

Finally, Spano asserts, as noted, that the resume provided at the hearing for the VE was for a different person.[48] Further, she maintains that the VE assumed that "brief and superficial" interaction meant 20 percent of the time or less, although the ALJ had not specified that figure in the hypothetical nor otherwise defined "brief and superficial" as any specific amount of time.[49]

## Analysis

<u>Standards of review</u>

The issues here are analyzed first under the well-known substantial evidence standard that need not be re-stated here. Further, the issue concerning the weight given to opinion evidence is considered under the so-called treating physician/good reasons rule that was in effect at the time this decision was rendered. The relevant elements of that rule will be set forth as part of the discussion below.

---

[46] *Id*. at 13.
[47] *Id*. at 17.
[48] *Id.* at 21-22.
[49] *Id*. at 22.

<u>Application of standards</u>

*First issue – res judicata/earlier decision*

As the Commissioner points out, the Social Security ruling that precludes a different finding in a subsequent proceeding from that reached in an earlier one applies only to later rulings arising under the same title as the prior one.[50] Here, the earlier application was for disability insurance benefits, while the present matter involves a claim for supplemental security income.[51] Moreover, as the Commissioner also notes, *res judicata* does not apply when the second application arises from a different period of time.[52] In this case, the earlier application alleged a period of disability from April 2005 to February 2009, while the current application claimed disability beginning in 2015.[53]

Spano, in her reply brief, does not address the Commissioner's points but contends that the "key point" is that the present ALJ "did not even address the fact that there was a prior ALJ decision."[54] Without more, and particularly without explaining why a prior decision involving a different claim and different period of alleged disability is relevant here, I find that the Commissioner has properly stated the applicable law and that, *contra* Spano, it is well-established that an ALJ is under no obligation to discuss every part of the

---

[50] ECF No. 18 at 3 (citing Acquiescence Ruling 98-4(6)).
[51] ECF No. 18 at 4 (citing record).
[52] *Id*. (citing *Earley v. Comm'r of Soc. Sec*., 893 F.3d 929, 933 (6th Cir. 2018).
[53] *Id*. (citing record),
[54] ECF No. 19 at 1.

record before him,[55] let alone reference the record of a prior claim arising under a different title and involving a different alleged period of disability.

*Second issue – assignment of weight/cherry-picking*

Spano in her reply brief frames this argument in three parts.

First, she argues that the ALJ improperly discounted the opinion of Matthew McKee on the grounds that it was not supported by his treatment notes.[56] Spano claims that the reason McKee didn't release his treatment notes was to protect Spano's privacy and so this explanation should be "considered" by the ALJ instead of totally discounting McKee's opinion.[57]

Second, Spano asserts that the ALJ erred when he discounted Dr. Selkirk's opinion on the grounds that the opinion was not supported by objective evidence.[58] Spano contends that there can be no objective evidence to support psychiatric impairments.[59]

Third, Spano maintains that the ALJ made "generalizations" about the elements of the B criteria and, by cherry-picking the evidence, failed to consider the totality of the evidence.[60]

---

[55] See, *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (citation omitted).
[56] ECF No. 19 at 1-2.
[57] *Id*.
[58] *Id*. at 2.
[59] *Id.*
[60] ECF No. 15 at 17-18.

As to the opinion of Matthew McKee, I note initially, as does the Commissioner, that McKee is a counselor and so not an acceptable medical source under the regulations.[61] As such, the ALJ need only generally explain the weight given to the opinions from such sources.[62] Here, and distinct from the matter concerning the absence of treatment notes,[63] the ALJ noted that McKee's opinion merely recited Spano's symptoms without explaining how those symptoms would effect work-related functions.[64] Although the ALJ did also note that McKee identified specific symptoms that would limit Spano's ability to work, he also stated that the mere mentioning of these symptoms does not establish the degree, frequency or severity of the symptoms.[65]

Accordingly, given that McKee was not an acceptable medical source and that Spano may well have waived her privilege by applying for benefits and placing her mental impairments directly at issue, while simultaneously offering McKee as a witness on her

---

[61] ECF No. 18 at 8 (citing regulations).

[62] 20 C.F.R. § 416.927(f).

[63] Although Spano cites McKee's invocation of privacy for his patient as obvious and sufficient grounds for not including his detailed treatment notes in the context of Spano's application for benefits, Spano does not go further and discuss that while courts do recognize a patient's interest in the privacy of therapist/counselor/patient communications (*Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), that interest is not absolute. *Id*. at 18 fn. 19. In fact, courts recognize that applying for Social Security benefit will waive the therapist/patient privilege for purposes of that application but that any information so provided to SSA will remain subject to privacy rights beyond that application. *Awalt v. Marketti*, 287 F.R.D. 409, 420 (N.D. Ill. 2012).

[64] Tr. at 27.

[65] *Id*. at 28.

behalf to the effects of those impairments,[66] I find no error in the ALJ's assessment of little weight to McKee's opinions.

As to the opinion of Dr. Selkirk, who is a treating source, I note first that the ALJ did not so identify Dr. Selkirk. Nor did her review Dr. Selkirk's history with Spano and Dr. Selkirk's area of expertise. However, the ALJ did state that a 2018 form submitted by Spano for discharge of a loan, which was completed and signed by Dr. Selkirk, gave no specific functional limitations.[67] Indeed, this opinion left blank the section asking for a description of the severity of the applicant's impairment and labeled the section calling for "residual functionality" as "N/A."[68] It is difficult to contest the assignment of little weight to a functional opinion that by its own terms eliminated any mention of residual functional capacity as not applicable.

Similarly, Dr. Selkirk's treatment notes from the four prior sessions with Spano are clearly merely diagnostic and do not opine as to any functional limitations nor describe any impairments in detail.[69] As the ALJ observed, Dr. Selkirk's notes do not evidence any

---

[66] Generally, the rules of evidence provide that the therapist/patient privilege is waived when the patient intends to offer the therapist's testimony as support for their claim. *Awalt*, 287 F.R.D. at 418. "The weight of authority holds that a party waives the [therapist/patient] privilege by claiming damages in situations where the party plans to introduce evidence of psychological treatment in support of their damages claim at trial."

[67] Tr. at 28.

[68] *Id*. at 776.

[69] Tr. at 609 (12/27/16) – Spano's symptoms are likely related to psychiatric impairment not post-concussion; *id*. at 597-98 (03/07/17) – neuropsychological testing indicated Spano's issue was related to anxiety rather than a neurological disorder; *id*, at 767-68 (08/03/17) – Spano's complaints were not likely neurological in nature – "nothing I can offer from a neurological perspective;" *id*. at 774, 884-86 (01/25/18) – "There is nothing I

"significant mental status findings,"[70] while noting earlier that "[n]europsychological testing suggested that [Spano's] somatic complaints were likely resultant [*sic*] of anxiety and psychological factors that were contributing to her clinical presentation."[71] In the end, Dr. Selkirk repeatedly stated that as a neurologist, he could offer no treatments.

In sum, although the ALJ could have been more thorough in framing the analysis of Dr. Selkirk's opinions, in the end, as set forth above, the ALJ provided sufficiently articulated good reasons for the weight assigned to Dr. Selkirk's opinions.

Finally, as to the argument that the ALJ did not consider the totality of the evidence as to the B criteria and cherry-picked the evidence, I observe, as noted above, that the state agency psychological experts all found, as did the ALJ, that Spano had no more than moderate limitations in the four areas of function. It is well-settled that state agency opinions can constitute substantial evidence in support of an ALJ's finding.[72] Therefore, while Spano maintains that the ALJ failed to consider all her symptoms and cherry-picked the evidence in evaluating the B criteria, both state agency reviewers - Paul Tangerman, Ph.D., in 2017 and Todd Finnerty, Psy. D., also in 2017 - specifically found that Spano had mild or moderate impairments in the B criteria.[73]

---

can offer from a neurological perspective." However, Dr. Selkirk did indicate a GAF score of 50 (*id*. at 776), which generally indicates only moderate symptoms. *Kornecky v. Comm'r of Soc. Sec.,* 146 Fed. Appx. 456, 503 (6th Cir. 2006).

[70] Tr. at 28.

[71] *Id*. at 24 (quoting record).

[72] *Conway v. Berryhill*, 2018 WL 7079488, at *8 (N.D. Ohio Dec. 17, 2018)(collecting cases).

[73] Tr. at 91 (Tangerman); 109 (Finnerty).

Inasmuch as these state agency opinions are recognized as a source of substantial evidence in support of the ALJ's finding, and since Spano has not here argued that these state agency opinions are in any way flawed or improperly fashioned, the ALJ committed no error in relying on them to support the findings in the B criteria.

*Third issue – resume of VE/unaddressed objection at hearing*

This final issue relates to whether the ALJ appropriately relied on the VE testimony in this case.

First, Spano argues that the wrong resume was included in the hearing material. But, as the Commissioner correctly points out, Spano's attorney did not raise this matter at the hearing and so waived it.[74]

Moreover, although Spano asserts that she objected at the hearing that the VE was assuming something beyond the hypothetical and that this objection went unaddressed, the ALJ at the hearing, immediately after the objection, asked Spano's counsel if he had his own hypothetical to offer of if he wanted to ask another question.[75] After Spano's counsel declined to frame his own hypothetical, counsel did ask another question that interpreted the existing hypothetical in a more restrictive fashion, which elicited a response from the VE that that all previously identified jobs would be precluded.[76] With that, the ALJ stated

---

[74] *Luukkonen v. Comm'r of Soc. Sec*., 653 Fed. Appx. 393, 405 (6th Cir. 2016); *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 837 (6th Cir. 2006).
[75] Tr. at 60-61.
[76] *Id*. at 61.

that he would make a decision in writing.[77] In that regard, the ALJ in his opinion specifically found that the testimony of the VE was consistent with the DOT.[78]

Based on this record, I find that to the extent that Spano raised an objection to the VE's testimony as being inconsistent with the hypothetical, that issue was resolved when Spano's counsel proffered an alternative interpretation of the hypothetical at the hearing in the form of a question to the VE and received an answer on the record, thus preserving the substance of the objection – *i.e.*, having the VE answer under an alternative explanation of the hypothetical. The ALJ in his decision then found the VE's original testimony – which construed the hypothetical as defined in her testimony – as consistent with the DOT, thus effectively overruling the objection.

As such, I find nothing procedurally or substantively improper in the actions of the ALJ regarding the objection at the hearing.

### Conclusion

For the reasons stated, the decision of the Commissioner denying Supplemental Security Income benefits to Michelle M. Spano is affirmed.

IT IS SO ORDERED.

Dated: September 27, 2021                                   s/William H. Baughman Jr.
                                                           United States Magistrate Judge

---

[77] *Id*.
[78] *Id*. at 29.